Samuel Rabbet, J.
This was a long and arduous hearing on objections to the independent nominating petition of the United Tax Payers Party. I would be remiss if I did not take this opportunity of complimenting the distinguished attorneys for the respective parties who have appeared in this matter, not only for submitting to the court excellent memoranda on the law, but also at great personal sacrifice, spending many, many hours, night and day, in the courthouse and outside of this courthouse, in a sincere effort to reach an area of agreement with respect to the issues here presented.
The nominating petition consists of 647 sheets containing 10,218 signatures. Of these, the court has found, either by agreement between the parties or by the court’s determination, that 4,388 are invalid. These invalid signatures are divided into the following classifications: 2,927 represent signatures invalid because the signers had not registered in the year 1956. This number was arrived at through the co-operation of counsel for the respective parties, who, after exhaustive investigation of the records, agreed upon that figure; 258 signatures represent subscribing witnesses who were not registered; 661 represent subscribing witnesses who gave wrong election districts or assembly districts in the petition; 142 represent a wrong total of signatures contained in the subscribing witnesses’ statements; 135 represent similar handwriting; 95 represent signers’ dates postdating the date of the subscribing witness on the petition; and 170 represent miscellaneous defects.
*315 I believe that the foregoing classifications total the 4,388 signatures which this court declared invalid. This leaves a total of 5,830 signatures which this court finds and declares to be valid signatures, and in sufficient numbers to constitute the petition of the United Tax Payers Party a good and valid petition.
In the course of the hearings, while holding certain signatures to be invalid for the various reasons above enumerated, the court held as valid, over the objections of counsel for objectors-petitioners a total of 2,361 signatures which they claim were invalid because of alterations in the statements of the subscribing witnesses other than alterations covering the election district and assembly district, and street addresses of the subscribing witnesses as of the date of the execution of the petition, which last items appear on lines 2 and 3 of the “ Statement of Witness.” In the course of the hearing, the objectors-petitioners referred to these alterations as having been made after the execution of the petitions, and in some cases pointed out to the court that there were no initials or any other notations alongside of the changes. The court finds that there were no initials alongside of any of the changes or alterations which were objected to.
The objectors-petitioners relied on Matter of Warsoff (289 N. Y. 108), wherein the Court of Appeals held that the Board of Elections was justified in its ruling that in the absence of explanation, erasures or alterations not initialed on the face of the petition invalidated the signatures affected. The distinction between the Warsoff case and the case at bar may be found in the well-reasoned opinion of the late Mr. Justice Deyo in Matter of Kerns v. Whiting (187 Misc. 656). There, as here, the Commissioners of the Board of Elections did not reject the nominating petition and the court held that the burden of proof remained with the party who objected to the validity of the petition and sought judicial review. This court is of the opinion that the objectors-petitioners in the case at bar had that burden of proof and failed to meet it. They were content to rest solely on the physical fact that uninitialed alterations appeared in the statement of subscribing witnesses in the sheets involved. That was insufficient, especially since the respondents, in support of their nominating petition, produced three witnesses, one of whom, Mrs. Alexander, testified in substance as follows: that instructions were given to the gatherers of signatures to bring their completed petitions to the Hotel Whitman in Jamaica where checks were made from maps with *316 respect to districts and changes were made, where necessary, in the statement of subscribing witnesses before signing same. It was stipulated that, without conceding the truth of their testimony, if Julius Hirt and Otto Gebauer testified, their testimony with respect to the foregoing procedure would be the same as that given by Mrs. Alexander.
Since it has been conceded that only 1,274 is the net number of signatures which have not been otherwise declared invalid, the figure of 2,361, mentioned above, is referrable only to the remaining net figure of 1,274.
Counsel for the objectors-petitioners has asked the court to take note of a determination which the court made on the objection made by them to the wrong number of signatures listed on certain of the petitions. The court, in its determination, ruled that 168 signatures which were objected to, were valid. These signatures appeared on petitions in which the subscribing witness noted as the number of signatures on the petition a number in excess of the number of signatures actually contained in the petition. In each instance, the number of signatures held valid by the court was limited to the actual number of signatures appearing in the body of the petition.
The petition nominating Henry J. Latham has been challenged on two grounds: first, that this candidate failed to comply with subdivision 2 of section 138 of the Election Law requiring an independent nominating petition to set forth the place of residence and place of business of the candidate, and second, that the petition does not specify a “ public office” for which an election is to be held.
It is conceded that the address given for Mr. Latham’s residence is in fact not his residence, but his office address, and the court will take judicial notice, that there is no such public office in the County of Queens as “ County Court, Queens County ’ ’ by which candidate Latham was designated in the nominating petition.
It has been held that an improper address of a candidate is a misstatement invalidating the petition (Matter of Liss, N. Y. L. J., March 21, 1944, p. 1104, col. 6, affd. 267 App. Div. 891; Matter of Berko, N. Y. L. J., Sept. 6, 1941, p. 518, col. 5, affd. 262 App. Div. 959); and that the failure to designate correctly the ‘£ public office ’ ’ for which a candidate seeks election likewise invalidates the petition. (Matter of Buchler v. Cohen, 242 App. Div. 803, affd. 265 N. Y. 605.) Accordingly, I hold that the petition originally nominating Mr. Latham was invalid.
Judge McKenube, who was designated by a committee to fill vacancies when Mr. Latham declined in order to accept nomi *317 nation to the Supreme Court, of course has no rights superior to those of the candidate he replaced. (Matter of Di Lorenzo v. Heffernan, 187 Misc. 766, affd. 271 App. Div. 802, affd. 296 N. Y. 687.) Accordingly, the petition is invalid with respect to Judge McKennee’s nomination.
Finally, the objectors-petitioners’ claim that the nominating-petition is void as to all the candidates listed thereon because of alleged fraud and deceit practiced by the sponsors and circulators of the petition in using the names and prestige of County Judge Peter T. Farrell and City Court Justice James J. Conroy without their knowledge, consent or authorization, and in persisting to use such names despite ample and adequate notice given to desist.
In support of the claimed invalidity of the petition upon the foregoing ground, the court’s attention has been directed to Matter of Maisel (23 N. Y. S. 2d 420, affd. 260 App. Div. 805). The court is of the opinion that this case is distinguishable from the one at bar. In Maisel, the burden of proof was cast upon the petitioners who filed the petition, since the Board of Elections had declared it invalid. In the case at bar, the burden of proof was upon the objectors-petitioners, since the Board of Elections had not declared the nominating petition invalid. Another difference is that the petitions in the Maisel case were circulated within a Congressional district in which the principal office on the ballot was for Member of Congress. In the instant case the petition is to nominate for city-wide offices, for Borough President and for four County judicial offices. In the Maisel case, moreover, those objecting to the petition adduced proof establishing that Congressman Celler’s name was placed on the petition for the purpose of inducing electors to believe that he was allied with the sponsors and in sympathy with their designations, and that they, therefore, signed the petition without further questioning. No such proof was attempted in this case. Accordingly, the court cannot find any fraud or deceit in the premises, and the objection to the petition on the basis of the Maisel case must be and is overruled. ■
Settle order on notice or on consent.